**Lensey BUCKHANNON, Petitioner,**

v.

**Margaret HAMBRICK, Warden, Respondent.**

**No. 79 Civ. 6881 (GLG).**

United States District Court, S. D. New York.

Feb. 27, 1980.

Lensey Buckhannon, petitioner pro se.

Robert B. Fiske, Jr., U. S. Atty., New York City, for respondent by Mary E. Kris, Asst. U. S. Atty., New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This case dramatically indicates that judges have, under the present statutory scheme, little to do with the length of time actually served by defendants sentenced by them, and that, in fact, these determinations are made by the Parole Commission (the "Commission").

The facts giving rise to the instant petition are as follows: On November 20, 1978, the petitioner in this action appeared for sentencing before this Court. A narcotics addict, he had stolen, or attempted to steal, money from twelve banks by walking in and passing over a note to a teller. Apparently some of these notes threatened violence if the money was not rapidly delivered. The defendant was, in fact, unarmed. He pled guilty to five of these robberies and allocuted to a sixth.

In rendering sentence it was the conclusion of this Court that the defendant, who was then 24 years old and had no prior criminal record, was not a serious threat to the community and, indeed, would be no threat at all if he could overcome his serious, long-standing, narcotics problem. The parole guidelines presented to the Court by the probation officer stated that, if the defendant were sentenced as a young adult offender, he would be paroled within 20 to 27 months. Consequently, this Court sentenced him, pursuant to 18 U.S.C. § 5010(b), to an indeterminate sentence, with, however, the belief that he would serve only about two years pursuant to the parole guidelines. Moreover, in the report on the sentenced offender which is required to be completed by the district judge, the Court specifically noted that the defendant desperately needed narcotics rehabilitation and

that, when the Parole Commission decided that the defendant had received the maximum advantages available from treatment, parole would appear appropriate.[1]

Following his confinement, the Parole Commission, pursuant to 18 U.S.C. §§ 4201 et seq., proceeded to "resentence" the defendant. In so doing, it initially decided that the probation officer's interpretation of the guidelines had been wrong, and that in view of there having been 11 separate bank robberies (and a 12th attempt), the severity of the offenses required that he serve at least 40 or more months. It then determined that because he would be required to spend so much time in prison, there was no immediate need to commence narcotics rehabilitation treatment or to follow the Court's suggestion that he be eligible for parole when his narcotics addiction appeared cured.

After filing extensive unsuccessful appeals within the parole system, the petitioner commenced the instant action pursuant to 28 U.S.C. § 2241. The Government, however, correctly pointed out that this Court has no power to proceed under section 2241 since the defendant is not incarcerated in this district. *Billiteri v. United States Parole Board*, 541 F.2d 938, 948 (2d Cir. 1976). Moreover, it is clear that personal jurisdiction over the Commission is also lacking. Nonetheless, it is apparent (and not disputed) that this Court does have the jurisdiction and the ability to consider the petition as a collateral attack under 28 U.S.C. § 2255.

It has recently been held that relief is available under section 2255 only when the sentencing court has acted without jurisdiction, or has imposed a sentence in excess of the maximum permitted by law. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). *See Dioguardi v. United States*, 587 F.2d 572 (2d Cir. 1978). In *Addonizio* it was held that a judge's fallacious assumption at the time of sentencing as to the actual amount of prison

---

1. In addition, the Court commented that the guidelines, 20 to 27 months, set forth by the local Probation Office appeared reasonable.

time a defendant would serve did not, when that assumption was learned to be false, provide the basis for a section 2255 petition. In this regard the Court stated that "subsequent actions taken by the Parole Commission—whether or not such actions accord with a trial judge's expectations at the time of sentencing—do not retroactively affect the validity of the final judgment itself." *Id.* at 290, 99 S.Ct. at 2243.

In some respects this case is distinguishable from *Addonizio*. In the instant action the Court administered an indeterminate sentence which was premised upon parole guidelines supplied to it by the Probation Department. Conversely, in *Addonizio* the parole guideline practices were not even initiated until after the defendant had been sentenced, and thus the sentencing judge should not have had any expectation as to the actual release date. This does not, however, seem in view of the case law, to be a meaningful distinction. A decision by the Commission to grant or deny parole, it has been noted, is not part of the sentencing process, *Dioguardi v. United States*, 587 F.2d at 575. Ultimate responsibility as to the actual release date of a prisoner is left, with certain limitations, to the Commission and not to the courts. *United States v. Addonizio, supra.* And with respect to the execution of sentences it has been held that the Commission is not bound to adhere to its own guidelines, *see Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977), and may review them at any time.

Under the parole system as it is presently operated, the Commission, in reaching its decision as to a release date, places primary reliance upon the severity (as it has determined) of the offense, and not upon any individual considerations about a particular defendant, or about his behavior while a prisoner. In this manner the traditional concept of parole as a rehabilitative tool through which persons could "reintegrate into society as constructive individuals as soon as they are able," *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972), has been replaced. And while "a prisoner's rehabilitation [remains]

an entirely appropriate consideration for the Commission to assess in deciding whether to grant release," *Moore v. Nelson*, 611 F.2d 434, 438 (2d Cir. 1979), it is now "clear to all sentencing judges that rehabilitation plays a minor part in the Commission's decision to parole a prisoner." *Id.* at 438.

From all this it is clear that the district judges no longer truly sentence a defendant. The parole guidelines do. This is unfortunate for a number of reasons.

To begin with, the parole guidelines are arbitrary and indiscriminate. In this instance the guideline time was doubled because of the *number*, rather than the nature, of the bank robberies involved. After examining all of the relevant information and factors, however, this Court concluded that the robberies should be viewed as a chain of related events. All 12 of the robberies occurred within the space of a few months and towards the end were occurring on an almost daily basis, motivated by the petitioner's insatiable need to satisfy his narcotics addiction. In a situation such as this it is apparent to this Court that to equate all bank robberies, much less all bank robbers, and to simply proceed on the basis of the number of crimes involved, is an irrational approach. This defendant's short lived career as a bank robber should have been viewed as a single event, and should have been treated as such for sentencing purposes.

It should be noted that this Court finds no fault with the present position of the Commission as to the need for uniformity in sentencing, and with its belief that imprisonment cannot, in most instances, rehabilitate. Accordingly, indeterminate sentences are usually inappropriate. There are cases, however, in which rehabilitation seems possible and thus should continue to be a factor in the Commission's decisions. *See Moore v. Nelson*, 611 F.2d at 438. This was clearly such a case. The petitioner's motive in committing his crimes was to feed an expensive drug habit with which he had been addicted since his childhood. While it may be difficult to overcome such a narcotics problem, it is not impossible. In the view of this Court the petitioner was capable of

being rehabilitated if his addiction could be cured. Under such circumstances a long prison sentence was not called for. Had the Court been able to foresee that the parole guidelines presented to it prior to sentencing would prove to be inaccurate, and that the petitioner would be "resentenced" by the Commission to a much harsher term, it would have sentenced the petitioner to "straight time," thereby controlling the release date to at least some extent.[2]

Much has been written as to the problem of sentence disparity and the role of the parole guidelines as a solution to this dilemma. *See e. g., United States v. Addonizio, supra; Geraghty v. United States Parole Commission,* 579 F.2d 238 (3d Cir. 1978), *cert. granted,* 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979). While in the opinion of this Court the problem of disparate sentences has been both overestimated and misunderstood, to the extent that a problem does exist it is certain that the erratic application of the current parole guidelines is no solution. As now applied the guidelines are sometimes so lenient that it is impossible to impose a legal sentence that will serve to imprison a defendant for the period that a court believes to be appropriate. Conversely, if a court imposes a sentence premised upon parole guidelines projected by the probation office to produce a certain, specific period of imprisonment, but then the Commission reevaluates the guidelines, the defendant may, as is the situation for the petitioner in the instant case, serve twice the sentence intended by the Court.[3] Such a system seems neither fair, nor likely to be effective. Moreover, the concept that an appropriate sentence can be determined simply by evaluating the crime and not the criminal, and not by considering individual factors, is a simplistic retreat into the dra-

conian sentencing procedures of ancient times.

While it is readily apparent that this Court does not approve of the procedures followed by the Commission in this case, it is severely constrained by the case law as to the action that it can take. *United States v. Addonizio, supra; Dioguardi v. United States, supra.* Consequently, the petition for habeas corpus must be dismissed.

It may well be that this unfortunate situation can only be corrected by action of Congress in amending the current statutory basis for Commission action. Nevertheless, in the hope that this Court misunderstands the law, and understates its powers, an appeal to the Court of Appeals will be certified.

The action is dismissed without costs. The clerk will enter judgment for defendant.

So ordered.

---

2. An extension of the parole guidelines cannot exceed the maximum court sentence less statutory "good time." A prisoner serving a sentence of five years or longer must, if not earlier released, be released after serving two-thirds of his term, so long as there is no finding that the prisoner has violated prison rules, or that there is a "reasonable probability" that he will commit an additional crime. 18 U.S.C. § 4206(d).

3. A different approach to this question has been put forward by the Judicial Council for

this circuit. In its "Benchmarks Project" it is recommended that a district court in sentencing an individual should determine what the appropriate period of imprisonment which that defendant should actually serve is, and then should sentence under the guidelines accordingly. This approach, however, while possibly a worthwhile one, is obviously incompatible with the current "resentencing" procedures followed by the Commission.